*Seabrook & Kennedy,* contra.

---

### 12441.   BUTLER *v.* BERRY SCHOOL.

"The general rule is that charitable trust funds are not to be depleted by subjection to liability for negligence."

(a) The facts of this case do not take the "Berry School" out of the operation of the foregoing general rule. It is primarily maintained as a charitable institution, and "is not liable for the negligence of its officers and employees, unless it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees."

DECIDED NOVEMBER 16, 1921.

Action for damages; from city court of Floyd county — Judge Nunnally. April 23, 1921.

*Frank Copeland, Alex. Harris,* for plaintiff.

36

*Maddox & Doyal,* for defendant.

BLOODWORTH, J.  In 1903 a charter was granted by the superior court of Floyd county to certain persons for " the formation of a corporation to be known as the Boys Industrial School, for the purpose of carrying on, conducting, and operating a boys' industrial school."  Later the charter was so changed by amendment that the name became the " Berry School," and a further amendment provided that it should be " a school .for the education of the poor country girls upon the same privileges, rights, and principles, and under the same regulations and provisions as in the original charter and the amendment thereto for the poor boys, so that the said Berry School shall, after this amendment, become a school for the poor country boys and girls alike under the amended charter."  The charter makes no provision for capital stock, and the evidence shows that none was ever issued.  The evidence further shows that the school is not conducted for private or corporate gain; that none of the officers or directors receive any salary, and the only salaries paid are to the teachers and instructors; that while a nominal charge is made against each pupil able to pay, a number of them never pay anything, and. that no student pays anything like his or her per capita expenses of operating the school; that it is supported primarily by voluntary contributions, and that it has never received any funds or property except that " donated by charitably inclined people " for the purpose of carrying out the aims of the school as declared in its charter.  The foregoing facts show that the " Berry School " is a good charitable trust, and comes under the general rule that institutions of strictly eleemosynary character, conducted purely and exclusively for public charity, supported by public munificence, and having no property except such as was dedicated to charitable purposes, should not be liable for negligence of their agents.  The. evidence shows also that " the school is principally an industrial school, and is to teach them [the pupils] the practical side as well as. the theoretical side.  At the boys' school they go to school four days and work two.  At the girls' school they work two hours each day and go to school the rest of the time.  The regular courses along literary lines are given.  They work four hours on Monday and two hours in the other days.  Along with the literary is carried

the industrial training along all lines. They are trained in the carpenter shop, the blacksmith shop, the laundry, cannery, dairy, print shop, farming, and, of course, stock raising. As to the girls' school they are given training in dairy, gardening, weaving, sewing, cooking, housekeeping, just to become home-makers, to go back to the home where they came from, to try to improve conditions there. They are also taught laundry work. Each boy is required to spend a certain time in each department of the boys' school, and the girls the same way; they go from one department to another."

The fact that all the pupils are required to give a portion of their time to work in the various departments of the school, and that some of them pay a part of their expenses, does not take this school out of the general rule above laid down or change its character as a charitable institution. In Richards *v.* Wilson, 185 Ind. 381, 382 (112 N. E. 794), Chief Justice Cox said: "The fact that a private corporation, as trustee, conducting a school of the character here involved, requires those who receive its benefits to pay tuition either in money or labor, does not take away the public benefit which flows from its work without profit to it, or change its character as a charitable institution in the legal sense. The tuition was in no aspect of the matter to be full compensation for the benefits bestowed on those who were to resort to the school for its advantages, and whatever it was to receive for it went to the partial support only of the school. No one was to receive pecuniary profit from it. The real expressed purpose in exacting tuition of any kind was to instill self respect and build character in those who profited from the bounty of those whose good will towards man and solicitude for the public welfare were to make the school possible. That the gift was to a public and not a private charity can not be doubted. The authorities are numerous and practically in accord." See authorities there cited. In Parks *v.* Northwestern University, 218 Ill. 381 (3) (75 N. E. 991, 2 L. R. A. (N. S.) 556, 4 Ann. Cas. 103), it is held that "a private corporation organized for the sole purpose of disseminating learning, having no power to declare dividends and depending for its maintenance upon the income from its property and the endowments and gifts of benevolent persons, holds its funds, from whatever source derived, in trust for the object of its organization,

and is within the rule exempting a public charity from liability for the negligence of its servants."

The facts in the case under consideration differentiate it from that of *Morton* v. *Savannah Hospital,* 148 *Ga.* 438 (96 S. E. 887). In that case, while the hospital was chartered as a charitable institution, "the greater portion thereof was set aside by its officers and superintendent for the treatment of patients who paid for the services they received." The Supreme Court held (p. 440): "Under circumstances as just enumerated (although the hospital is a charity, and the general rule is that charity trust funds are not to be depleted by subjection to liability for negligence) the corporation would be liable, but a recovery would be limited to the extent of income derived from treatment of patients who paid for services." However, in that case it was also held (p. 438): "With the exception just stated, an incorporated hospital, primarily maintained as a charitable institution, is not liable for the negligence of its officers and employees, unless it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees." See *Plant System* v. *Dickerson,* 118 *Ga.* 650 (45 S. E. 483), and cases cited. In Williamson *v.* Louisville Industrial School of Reform, 95 Ky. 251 (24 S. W. 1065, 23 L. R. A. 200, 44 Am. St. R. 243), Judge Hazlerigg, who delivered the opinion of the court, said (p. 253): "If the funds of these institutions are to be diverted from their intended beneficent purposes by lawsuits and judgments for damages for negligent or malicious servants, their usefulness — indeed their existence — will soon be a thing of the past." It will be noted that in the case sub judice there is no allegation in the petition that the Berry School failed to exercise ordinary care in the selection of competent officers and servants, or failed to exercise such care in retaining its officers and employees. Attention is also directed to the fact that the prayer of the petition in this case is for general damages only. Considering the foregoing facts and authorities, it is clear that the Berry School is a charitable institution, supported primarily by donations from the public; that it is not run for private or corporate gain, and that it would be against public policy, as well as against the settled principles of law, to allow any judgment to be rendered against it because of the negligence of any of its em-

ployees or agents, except where it failed to exercise ordinary care in selecting and retaining its employees and servants. This being true, conceding (but not admitting) that errors were committed by the court upon the trial of the case, they were harmless, as the verdict rendered was demanded. The motion for new trial was properly overruled.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*