22482. JACKSON *v.* ATLANTA GOODWILL
INDUSTRIES INC.

DECIDED JANUARY 27, 1933. REHEARING DENIED FEBRUARY 17, 1933.

*Abraham Ziegler,* for plaintiff.

*McDaniel, Neely & Marshall,* for defendant.

MACINTYRE, J.  George Jackson sued Atlanta Goodwill Industries Inc., to recover for personal injuries and damage to his automobile, alleged to be the result of the negligence of defendant's servant, John Davis, in driving defendant's automobile-truck into plaintiff's automobile.  After the plaintiff had introduced evidence and closed his case, and before the defendant had introduced any evidence, the court rendered the following judgment: "At the conclusion of the evidence, upon motion of the defendant, the case is dismissed, there being no right of action under the pleading and the evidence in the case."  On March 28, 1932, and during the term of court at which said judgment was rendered, the plaintiff filed its motion to vacate the judgment and reinstate the case, the material part of the motion being as follows: "Plaintiff insists the granting of said nonsuit was error, for the following reasons: The said judgment  .  .  contravenes and is in conflict with the fourteenth amendment to the United States constitution, sec. 1, which provides as follows:  'nor shall any State deprive any person of life, liberty, or property without due process of law;' and sec. 1, which provides as follows: 'nor deny to any person within its jurisdiction the equal protection of its laws.'  And now, at the term of court at which said nonsuit was granted, comes plaintiff and moves the court to set aside and vacate the nonsuit, and reinstate the case."  The trial judge overruled the motion to reinstate, basing his judgment upon the theory that the defendant was not liable, because it was a charitable institution.  Exception was taken to this judgment.

We are first confronted with the question whether or not the writ of error should be dismissed upon a motion the substance of which is as follows:  (1) Plaintiff in error failed to except to the judgment dismissing the case.  (2) The motion to reinstate was based solely upon a constitutional question which was not raised until after the case had terminated.  (3) Said constitutional question

has no applicability to the instant case. In the beginning of this discussion we will state that we are satisfied that the judgment dismissing the case was really a nonsuit. See *Zachery* v. *Madison,* 18 *Ga. App.* 490 (2) (89 S. E. 594). It is true that the plaintiff did not except to the judgment of nonsuit, and that his only exception is to the judgment overruling his motion to reinstate the case; but under the following ruling in *Aiken* v. *Peck,* 72 *Ga.* 434, we hold that the plaintiff's procedure was proper: "Where a nonsuit has been granted, the losing party may either bring his case to the Supreme Court by writ of error, or may, during the term of the trial, move to reinstate the case, and from a refusal of that motion, properly made, may bring the case to this court." See also *City of Atlanta* v. *Jenkins,* 137 *Ga.* 454 (73 S. E. 402) ; *Glenn* v. *Glenn,* 152 *Ga.* 793 (111 S. E. 378). In our opinion, the motion to reinstate does not bind the plaintiff to rely solely upon the constitutional question sought to be raised. We think it squarely presents the question as to whether or not the nonsuit was properly granted. Without further discussion, we hold that the motion to dismiss the writ of error is not meritorious, and we deny it.

We come now to the controlling question in the case—the correctness of the judgment overruling the motion to reinstate the action. The judgment contains the following language: "Though the defendant admits in its answer the allegations of paragraph 5 of plaintiff's petition, that defendant operates for gain or profit, in that 'it maintains a store for the sale of merchandise,' that seems to be a conclusion disproved by the evidence. . . Under 27 *App., Berry School* case, it seems my judgment is right." Paragraph 5, referred to in the court's judgment, is as follows: "That the defendant is a charitable institution, but operates for gain or profit, in that it maintains a store for the sale of merchandise." In the defendant's answer he "admits paragraphs 5 and 6." We do not construe the defendant's answer as admitting that it is such a charitable institution as can be sued for a tort, and we agree with the trial court that the question at issue must be determined by an inspection of the evidence in the record in connection with the law applicable thereto. The only evidence bearing upon the question we are considering is that of the witness W. G. Glisson, sworn for the plaintiff. His testimony is as follows: "I am superintendent of the Atlanta Goodwill Industries. The Atlanta Goodwill Indus-

trics does not operate a store for profit. It is a fact that we have furniture there and articles of clothing that we sell to the public. Yes, we sell it for cash. No, we do not sell them for about what they are worth; we sell the stuff for only a partial part of what it is worth, due to the fact that it is for people who have very little money to spend. It is a fact that we sell second-hand commodities there. As to what we do with the money, the entire proceeds is used for what is known as paid labor. Of course there is a certain amount that has to be expended for gasoline and lights and water, and the expense of operation of the institution. Aside from that, the entire proceeds goes for purposes of charity. Yes, we are chartered as an eleemosynary institution under the superior court of Fulton county. This paper that is exhibited to me is our original charter. The majority of all money that is taken in at the store, and all the commodities that we get, are utilized in following out the purposes of this charter, to furnish labor to those who need it, and to furnish commodities for charitable purposes. There are some extreme cases—a widow, for instance, who has children and is not able to get away from home and render any service for the livelihood of those children, is from time to time given furniture and clothing. There is absolutely not anybody who makes any profit out of it, in the sense that everything that is made out of it goes back into it for charitable purposes. Yes, we have a truck that was used in connection with this charitable work in hauling in furniture and stuff that people would give us, which stuff was subsequently worked over and sold for charitable purposes. As to whether or not that truck as operated by this man Davis, I don't know who was driving the truck. I was not superintendent at that time. Yes, the truck was operated in connection with this charitable business that we were conducting."

This is a case where a third party who was not a beneficiary of the defendant institution was injured by the tort of an agent and servant of said institution. As we view the evidence, it is also a case where the defendant was primarily and solely a charitable institution. See *Butler* v. *Berry School, 27 Ga. App.* 560 (109 S. E. 544). Indeed, the statement of facts set out in the *Berry School* case leads us to the conclusion that Atlanta Goodwill Industries Inc. is more essentially a charity than is that school. For instance, in the case cited this language is used: "The fact that all the pupils are re-

quired to give a portion of their time to work in the various departments of the school, and that some of them pay a part of their expenses, does not take this school out of the general rule above laid down, or change its character as a charitable institution." The law applicable to the facts of the case at bar is laid down in that case as follows: "The facts under consideration differentiate it from that of *Morton* v. *Savannah Hospital*, 148 *Ga.* 438 (96 S. E. 887). In that case, while the hospital was chartered as a charitable institution, 'the greater portion thereof was set aside by its officers and superintendent for the treatment of patients who paid for the services they received.' The Supreme Court held (p. 440): 'Under circumstances as just enumerated (although the hospital is a charity, and the general rule is that charity trust funds are not to be depleted by subjection to liability for negligence) the corporation would be liable, but a recovery would be limited to the extent of income, derived from treatment of patients who paid for services.' However, in that case it was held (p. 438): 'With the exception just stated, an incorporated hospital, primarily maintained as a charitable institution, is not liable for the negligence of its officers and employees, unless it fails to exercise ordinary care in the selection of competent officers and servants, or fails to exercise ordinary care in retaining such officers and employees.'"

In the instant case the defendant corporation was primarily and essentially a charitable institution. The petition does not allege, and the evidence does not show, that it failed to exercise ordinary care in selecting its truck-driver, or in retaining him in its service. He appears to have been engaged in work directly connected with and necessary to the charity. The case does not, of course, come within the exception to the general rule first stated above in the *Savannah Hospital* case. Therefore we hold that the judgment denying the motion to reinstate the case was proper.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*