39089, 39090. COX v. DeJARNETTE *et al.*, Trustees (two cases).

DECIDED SEPTEMBER 29, 1961—REHEARING DENIED
OCTOBER 18, 1961.

*Houston White,* for plaintiffs in error.

*Hurt, Gaines, Baird, Peek & Peabody, W. Neal Baird, Joe Freeman,* contra.

BELL, Judge. ■ The first question to be decided is whether an action is maintainable against the board of trustees of a charitable trust, the recovery, if any, to be satisfied out of the

assets of the trust held by the trustees but not against the trustees personally.

The immunity of non-governmental charities from liability for tort damages is undergoing considerable change at the present time in the national family of jurisdictions. From the early viewpoint of charitable immunity in England to this enlightened era, when the doctrine is in the process of being reevaluated, there has been a flourishing tendency to hold charities liable in tort to the same degree as any individual or corporation. The solutions advanced by the various States have taken divergent courses. "On the one side, there is a growing number of jurisdictions which hold that charities are liable in tort to the same extent as individuals and private corporations. On the other side, there are jurisdictions which grant charities 'complete' immunity, that is, immunity, irrespective of the victim's status as a servant of the charity, or as a beneficiary of its bounty, or as a stranger. An intermediate view is taken in jurisdictions in which a charity's immunity is limited to protecting its trust property from execution under a judgment rendered against it in a tort artion, and in other jurisdictions in which charities are granted a partial (qualified, limited) immunity, depending upon any, or a combination, of the following factors: (1) the victim's status as a servant of the charity, or as a stranger, or as a beneficiary of its bounty; (2) the nature of the negligence as chargeable against the charitable institution itself (corporate negligence), such as negligence in selecting and retaining employees, or against subordinate employees only. . . Irrespective of whether a charity enjoys 'complete' or partial immunity from tort liability in a particular jurisdiction, it may be liable for torts committed in the course of noncharitable (commercial) activities, or for breach of a duty imposed upon it by statute, as distinguished from a common-law duty. As to each of these alternatives the courts are in disagreement. Equally conflicting are the various theories and factors upon which these conflicting results have been reached." 25 A.L.R.2d 29, 41, 42.

In the case of Mississippi Baptist Hospital v. Holmes, 214 Miss. 906 (55 S2d 142, 25 ALR2d 12, 25) a charitable hospital corporation was sued for damages for the death of a patient

whose payments covered the full cost of the services rendered him. His death resulted from a transfusion of the wrong type of blood. The hospital carried liability insurance. In that case the Mississippi Supreme Court examined exhaustively and with much erudition the charitable immunities doctrine, and concluded that while it would not place liability upon the hospital merely because it carried liability insurance, "we merely emphasize its [the insurance] *availability*, together with the practice on the part of many people of carrying hospital insurance, and call attention to these considerations as a persuasive argument in favor of applying the general law on the subject of negligence in suits against charitable institutions which derive the larger portion of their *earnings* from pay patients." p. 153. There the court went on to point out that while the function of creating public policy is primarily one to be exercised by the legislature and not by the courts, it is equally true that when the reason for the existence of a declared public policy no longer obtains, the court should, without hesitation, declare that the policy no longer exists, and "especially when the same has been created by the courts instead of by the legislature."

"The present state of the law is one of disagreement and confusion, which is undergoing rapid change. The extent of the immunity conferred varies according to the particular justification adopted, although few courts have adhered to any one of them with entire consistency." Prosser, Law of Torts, 2d Ed., §109, p. 786.

The doctrine of charitable immunity from tort liability exists in Georgia, at least in part; thus "the general rule is that charity trust funds are not to be depleted by subjection to liability for negligence . . . and that it would be against public policy, as well as against the settled principles of law, to allow any judgment to be rendered against it because of the negligence of any of its employees or agents, except where it failed to exercise ordinary care in selecting and retaining its employees and servants." *Butler v. Berry School*, 27 Ga. App. 560, 563 (109 SE 544). Again, "the general rule in Georgia is that such funds will not be depleted by subjection to liability for the negligence of a trustee." *Burgess v. James*, 73 Ga. App. 857, 859 (38 SE2d

637); 9 A.L.R.2d 134 n.; 25 A.L.R.2d 46 n. In the latter case this court held that the petition was demurrable where the judgment sought was for general damages, to be satisfied in part from charitable trust funds, where it failed to allege that the defendant trustee was negligent in selecting or retaining its employees. Numerous cases in this State have considered the charitable immunities doctrine, the two leading ones appearing to be *Plant System v. Dickerson*, 118 Ga. 647 (45 SE 483) and *Morton v. Savannah Hospital*, 148 Ga. 438 (96 SE 887). Most of the actions considered by our Georgia appellate courts have been against incorporated charitable entities rather than the trustees of a trust res.

The Supreme Court has held, however, that a trust estate may be held liable for the negligence of the trustee. *Miller v. Smythe*, 92 Ga. 154 (18 SE 46). There, Justice Lumpkin, speaking for the court, held the trust liable "because the trust estate obtained the benefit of the contract made by the trustee, and should, as to the tenant, bear whatever burden the law imposes upon landlords."

While actions against charitable trusts for the negligence of trustees are rare, the modern tendency appears to be to make the trust estate liable for torts committed by the trustee in the administration of a trust. III Scott on Trusts, 2d Ed. § 271A.2, p. 2101.

It would appear as a matter of sound principle that there is no reason to distinguish, as to immunity, between a charitable corporation and a charitable trust. If the immunity exists in the one case, it should also exist in the other, since the public policy of preserving the funds for charitable purposes would be the same in either case. See *Jackson v. Atlanta Goodwill Industries, Inc.*, 46 Ga. App. 425 (167 SE 702).

We must agree with the defendant that the doctrine of charitable immunity from tort liability is established in our law. The underlying reason for this policy seems to be the advisability of preserving the eleemosynary funds so as to enable the charity to carry out its beneficent purposes.

*But here the petition alleges that the charity has non-charitable assets and lists as such an asset an owner's public liability*

*insurance policy, issued by a named insurance company, title to which is held by the defendant trustees, insuring the defendant trustees for bodily injury liability to third persons for which they shall become legally obligated to pay the third persons, such as the petitioner, arising out of the ownership, maintenance, or use of the church premises and all operations necessary or incidental thereto.*

It is apparent that to the extent of the coverage afforded by this policy, the charitable assets of the church held by the defendant will not be depleted by the rendition of a judgment against the trust in favor of the plaintiff for the damages sustained. Up to the amount of insurance thus afforded, there appears to be no sound reason or public policy for conferring immunity from tort liability upon the trust, though it be a charity.

In addition to this view, there are several other reasons why we think there should be no immunity from tort liability accorded to a charitable institution to the extent that it may be covered by a liability insurance policy. These additional reasons are: (1). The purpose and intent of the charitable institution in securing a liability policy obviously appears to be in the interest of furthering its beneficent enterprises by precluding uncompensated injury and damage to one which may be occasioned by its actions in carrying out its charitable functions. Obviously, an eleemosynary institution having injured a person would wish to compensate for the injury, even though its charitable assets would not otherwise be subject to suit. Where the governing authority of a charitable institution deems it to be in keeping with the beneficent purposes of the charity to expend and to deplete its strictly charitable assets to the extent necessary to make payments upon the premium of a liability policy, this depletion of charitable assets should not be negated through the extension of immunity to the face amount of the policy. (2). The delivery and the acceptance of an insurance liability policy between an insurance company and a charitable institution and the payment and acceptance of its premium constitutes, as to the amount of the policy, a waiver by the charity and by the insurance company of the immunity otherwise accorded to the charitable assets. (3). It would appear to be a violation of

public policy to permit an insurance company to sell liability insurance for a consideration paid from charitable assets and then to allow or to permit the insurance company to preclude all liability by hiding behind the veil of the insured's charitable immunity.

The paragraph of the petition praying for judgment against the trustees as trustees asks that the judgment be recoverable against all of the assets held in trust by the defendants "whether such assets be used for charitable or non-charitable purposes, to the extent *as may be provided by law.*" (Emphasis added.)

Under the above ruling we construe this prayer for damages as valid only to the extent of the non-charitable asset listed, the insurance policy alleged in the petition, since this is to the extent the law provides for a recovery against the trust, and no further.

The holding here is merely to the effect that a cause of action is stated by the petition to the extent of any liability coverage afforded by an insurance policy which may be effective to cover the cause. Nothing said in this opinion is to be construed as holding that the particular insurance policy involved here is subject to any judgment which may be awarded to the plaintiff. Whether the policy covers the alleged claim in this case is dependent upon its specific terms. The policy was not attached to the petition, and hence is not before us. Upon the trial it will be necessary to prove the insurance policy whereupon it would be subject to such construction as the law may require.

This case presents an unusual situation in our law in that it permits that the non-charitable asset, the liability insurance policy, be specifically alleged in the petition. In any other petition, except where especially authorized by statute, a reference to a liability insurance policy would be subject to demurrer, and upon proper motion made would require a recasting of the petition by a purging of the language from the pleading which refers to or is descriptive of the policy. These truths are elementary in our practice. See *Rodgers v. Styles*, 100 Ga. App. 124 (3) (110 SE2d 582). But where, as here, the existence of the cause of action is based upon, indeed is dependent upon, the liability policy as a non-charitable asset, it is essential that it be set forth in the petition. Under the exception to the charitable

immunities doctrine which this case enunciates, namely, the existence of non-charitable assets without which the charity would be immune from tort liability, the then known non-charitable assets must be alleged in the petition in order to state a cause of action.

This ruling is not intended to affect the rules previously established as to tort liability of non-profit hospitals to paying patients, and like situations. *Robertson v. Executive Committee of Baptist Convention*, 55 Ga. App. 469 (190 SE 432).

The trial court erred in sustaining ground 2 of the demurrer which raised the charitable immunities doctrine as a bar to the cause of action, and also erred in sustaining special demurrers 16, 17, and the second unnumbered paragraph of special demurrer 18. Interpreting paragraph 56 of the plaintiff's petition in the light of paragraph 57, the objection to the language, "but some of said property being held for non-charitable purposes," is restricted by this opinion to the non-charitable asset listed in paragraph 57, namely, the liability policy which, as held above, would be the only asset subject to any judgment which may be rendered against the trustees of the charitable institution in this case.

■ Special demurrers 3, 9, 12, 13, and 14, to the sustaining of which exceptions were taken, attack allegations in the petition which charge the condition of the steps during wet weather as a nuisance, being such by virtue of a city ordinance set forth in paragraph 26 of the petition. These demurrers attack the ordinance as vague and indefinite, thus violating Article I, Section 1, Paragraph 3 of the Constitution of the State of Georgia of 1945 and the 14th Amendment, Section 1, of the Constitution of the United States, and seek to delete the references throughout the petition as to the condition of the steps constituting a nuisance.

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition." Prosser, Law of Torts, 2d Ed. § 70, p. 389.

■ In his brief, the plaintiff's counsel urges this court to overrule that portion of *Cox v. Ray M. Lee Co.*, 100 Ga. App. 333, 335 (111 SE2d 246), an action brought by the plaintiff Alma D. Cox against the contractor and the firm of architects which constructed the steps and landing of the defendant church in the present case. In division 2 of that opinion this court held that the portion of the petition which charged the landing and steps were a nuisance did not set forth any cause of action on the basis of nuisance. There this court restricted the definition of an actionable private nuisance to one which is "specially injurious to an individual by reason of its proximity to his home."

Plaintiff urges that this common-law restriction of a private nuisance to an unreasonable interference with the interest of an individual in the use or enjoyment of his land is not the law in Georgia; that *Code* § 72-104 has broadened the common-law definition; and that an interest in real property is not essential to the maintenance of an action for a private nuisance. Admittedly *Code* § 72-104 provides that a private nuisance may injure either the person or property or both and in either case a right of action accrues to the person injured or damaged. However, the Supreme Court has ruled that the definition of "nuisance" stated in *Code* § 72-101 was not intended to change the common-law definition of a nuisance. *Hill v. McBurney Oil &c. Co.*, 112 Ga. 788, 793 (38 SE 42, 52 LRA 398).

The common law and the Restatement of Torts restrict the action for private nuisance to invasions of interest in the use and enjoyment of land, including interest in the use and enjoyment of easements and profits, but where there is an invasion of these interests the plaintiff may recover not only for harm arising from acts which affect the land itself and the comfortable enjoyment of it, but also for harm to members of his family and his chattels. IV Restatement of Torts, §§ 822, 823, and *Scope and Introductory Note* to Chapter 40, p. 215, et seq.

While there is language in *Towaliga Falls Power Co. v. Sims*, 6 Ga. App. 749 (65 SE 844), which suggests that under the Georgia statute the action for nuisance is not restricted to instances where the plaintiff has an interest in real estate, we regard that as dictum, since the plaintiff there was a tenant and thus had an interest in the land sufficient for the maintenance of

an action for private nuisance. See *Stanley v. City of Macon*, 95 Ga. App. 108, 112, 113 (97 SE2d 330).

Here there are no allegations that the slippery steps and landing affected the plaintiff's use and enjoyment of her real property, and there is, therefore, no cause of action stated for private nuisance.

■ It is urged that the city ordinance as quoted in paragraph 26 of the petition as follows: "(1) Conditions Constituting Nuisance. Any building structure, enclosure, place or premises is a nuisance where it is perilous to life or property by reason of its construction . . ." makes these steps a nuisance within the ordinance because of the allegation that they were perilous to life or property by reason of their construction. This court cannot take judicial notice of a municipal ordinance, and, therefore, it must be set out in the pleadings. *Irwin v. Torbert*, 204 Ga. 111, 120 (49 SE2d 70). Assuming without deciding that the ordinance constitutes a sufficient standard to be enforceable, although it is attacked as too vague and indefinite in certain of the defendant's special demurrers, we hold that this city ordinance cannot change the statutory definition of "nuisance," insofar as it affects civil liability in damages for private nuisances, which has been established by the General Assembly and the approving authority. "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Art. I, Sec. IV, Par. I (*Code Ann.* § 2-401), Constitution of the State of Georgia. It necessarily follows that a municipality is without power to change the definition of "private nuisance" as established by a general statute.

■ It is further urged that because the step landing and the steps violated the alleged city ordinances, that they were a public nuisance. A public nuisance is defined in *Code* § 72-102 as one which damages all persons who come within the sphere of its operation, though it may vary in its effect on individuals. "Public nuisance" was defined at the common law generally in terms of some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common

to all. "A nuisance is 'common' or 'public' . . . where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled." 66 C.J.S. 730, Nuisances, § 2. In view of the holding by the Supreme Court in the *Hill* case (supra) that the Georgia definition of nuisance is unchanged from the common-law definition, we hold that the landing and steps of a church, though allegedly so negligently constructed as to be hazardous to life and limb, do not constitute a public nuisance. We do not feel there is a right common to all of the public to use the steps and landing of a church of a particular denomination.

The trial court properly sustained special demurrers 3, 9, 12, 13, and 14.

■ The next exception of the plaintiff relates to the sustaining of special demurrer number 8 (d). The other four divisions of this demurrer were overruled. This paragraph 8 (d) of the pleading demurred specially to and moved to strike paragraph 25 of the petition, upon the ground that the ordinance was void because it was "too vague and indefinite to be enforceable in that no standard or guide whatsoever is given as to how and in what way steps and treads can be constructed so as to prevent any and all persons from slipping thereon regardless of the condition of the person slipping and any lack of care on his part, and defendants aver therefore that said ordinance violates Article 1, Section 1, Paragraph 3 of the Constitution of the State of Georgia of 1945, and the 14th Amendment, Section 1, of the Constitution of the United States in that said ordinance deprives these defendants of their property without due process of law."

Paragraph 25 of the petition thus demurred to alleged: "That there were valid and existing ordinances of the City of Atlanta, known as Section 604, Subparagraph (c) and Section 607, Subparagraph (1) of the New Building Code of the City of Atlanta, adopted by Council March 6, 1950, and approved by the Mayor March 7, 1950, which provided as follows: ' . . . Exterior stairways shall conform to requirements of interior stairs in Section 604. . .' '(c) Treads and landings shall be constructed in a manner to prevent persons from slipping thereon.' " Since this court cannot take judicial notice of

municipal ordinances (*Irwin v. Torbert,* 204 Ga. 111 (2), 120, supra), we must rely on the portion set out in the petition as constituting the relevant ordinance in its entirety. As thus pleaded, we think the trial court was correct in its ruling that the ordinance was too vague and indefinite to be enforceable. "It is a general principle of statutory law that a statute must be definite and certain in its provisions to be valid, and when it is so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to is application, it violates the first essential of due process of law." *City of Atlanta v. Southern Ry. Co.,* 213 Ga. 736, 738 (101 SE2d 707), and the authorities there cited. The ordinance quoted in the petition providing that exterior stairways shall conform to the requirements of interior stairs in Section 604, and that treads and landings shall be constructed in a manner to prevent persons from slipping thereon, we hold is too vague and indefinite to be enforceable, as it does not give a sufficient guide to men of common intelligence.

While normally this court is without jurisdiction to consider questions of constitutional law, where the issue raised involved the constitutionality of a municipal ordinance, this court has jurisdiction. "The answer of the defendant, contending that the resolution adopted by the city is unconstitutional, and that he is being deprived of his property without due process of law and of equal protection in violation of stated Code sections, involves the constitutionality of a municipal ordinance and application only of the State and Federal Constitutions, which is within the jurisdiction of the Court of Appeals." *Ledbetter v. Roberts,* 213 Ga. 47 (96 SE2d 614). The trial court properly sustained special demurrer 8 (d) to the petition.

Under the above ruling the trial court also properly sustained special demurrer number 11, which moved to strike, as a ground of negligence, the alleged violation of the considered ordinance.

■ The defendant urges that the petition is fatally defective, and the trial judge properly sustained the general demurrer attacking it, for the reason that there are no allegations which state that the steps complained of were less safe than other

similar steps maintained by similar charitable organizations or churches, citing the case of *Brand v. Pope,* 103 Ga. App. 489, 491 (119 SE2d 723). The *Brand* case does not support this contention. There the allegations of negligence were based on the premise that the defendant should not have had a glass sliding door between the "living room" and the "Florida room" in his home, for no defect in the construction of the door itself was alleged, nor was it alleged that the defendant was negligent in the maintenance of the door other than allowing it to be closed without prior warning to the plaintiff. There this court held that the plaintiff, while an invitee on the premises, must show that the conditions causing the injuries were less safe than those provided by ordinarily prudent owners and occupiers of land for their invitees. Construing the allegations of the present petition, the reasonable and proper construction to be placed upon it is that the conditions existing were less safe than those provided by ordinarily prudent owners of land, since it is charged that the steps and landing when wet were slippery like glass, were certain to cause third persons to slip on them and fall, were inherently and intrinsically dangerous to third persons, were so negligently defective as to be imminently dangerous, created a hazardous and extremely dangerous condition, and were perils to life and limb of third persons. Certainly these are not the conditions which ordinarily prudent owners and occupiers of land would provide for their invitees. We do not interpret the *Brand* case as holding that there must be a specific allegation in the petition that the premises of the landlord were less safe than those provided by ordinarily prudent owners and occupiers of the land where the petition sufficiently alleges conditions which make this fact apparent.

The petition stated a cause of action in negligence and was not subject to general demurrer. The trial court erred in sustaining the general demurrers to the petition.

*Judgment affirmed in part and reversed in part. Felton, C. J., and Hall, J., concur.*