## 22911. NEWILL *v.* ATLANTA GAS-LIGHT COMPANY.

DECIDED NOVEMBER 27, 1933. REHEARING DENIED JANUARY 11, 1934.

*Alexander & McLarty,* for plaintiff.

*Alston, Alston, Foster & Moise, Henry J. Miller,* for defendant.

GUERRY, J. Mrs. Newill sued for damages, alleging that she was burned by an explosion of gas furnished to her residence by the defendant, and alleged, that the defendant changed the nature of the gas furnished to her from manufactured gas, which was not highly explosive, to natural gas, which was more than twice as explosive as manufactured gas; that the explosion would not have occurred had the manufactured gas been in the conduits and pipes in her home, and that it occurred only because of the change of such gas in said fixtures without giving warning of the increased risk and danger incident thereto. The original petition was demurred to, on the grounds: that it stated a bare conclusion of the pleader; that it failed to allege the absence of the right to supply natural instead of manufactured gas; that it failed to allege any

duty of the defendant to inform plaintiff that natural gas was more explosive than manufactured gas; that it failed to allege how the increased explosive intensity of the natural gas caused the explosion; or how this change alone caused the explosion or what caused the explosion; that the bare fact that the gas was an explosive did not state a cause for the explosion, and that it failed to allege any act of the defendant constituting the proximate cause of the explosion. The court sustained the demurrer on all grounds and gave, to the plaintiff fifteen days in which to amend. The plaintiff amended as follows: that for years the gas sold by defendant to its customers was a manufactured gas and carried a certain amount of pressure, which had a tendency to break the pipes in which it was being conducted or to force its way through weaknesses or joints in the pipes, that the pipes used had been theretofore sufficient to hold in the manufactured gas and prevent its leaking, and thus exclude it from the surrounding air; that some months prior to the injury complained of the defendant abandoned the use of manufactured gas and began distributing natural gas through the same pipes theretofore used; that the natural gas carried a much heavier pressure than manufactured gas and increased the liability of breaks occurring in the pipes and leaks through the joints or other crevices; that the plaintiff had nothing to do with such distribution and knew nothing of the fact stated above and was under no obligation to know or to take precaution against it; that the plaintiff did not know, and it was the duty of the defendant to warn its patrons of such fact and of the increased probability of its escape and of consequent injury; that the distribution of natural gas by the defendant, because of its greater pressure, caused leaks in the pipes of the plaintiff and did force its way through them and that the plaintiff had no warning thereof; that on September 21, 1931, the high pressure of the natural gas in the pipes of plaintiff caused an escape of gas through a crevice in the pipe, and an unusual and dangerous quantity of gas became diffused in one of the rooms of plaintiff's house, plaintiff being wholly ignorant of such mixture and of the danger of it, not having been warned by defendant; that the escaping gas produced a slight odor, and plaintiff, as was formerly usual under such circumstances, sent for a plumber to see if he could discover the leak and correct it; that the plumber got up on a step-ladder, and, in

order to find the leak, struck a match, which would have been a perfectly safe thing to do and was the universal method of finding such leaks when manufactured gas was used; that the plaintiff was standing by the door and had nothing to do with the methods employed by the plumber; that under the old or manufactured-gas system no injury would have resulted, and had the plaintiff been warned of the change, no injury would have resulted; that when the plumber struck a match a violent explosion and resultant injury occurred. Defendant renewed its demurrer and urged, as a further reason why the petition should be dismissed, that the amendment set out a new cause of action, and that the petition showed on its face that the proximate cause of the injury was the negligence on the part of the plumber in striking the match. The court sustained the general demurrer and the plaintiff excepted.

■ It is true that ordinarily there may be no duty resting on a gas company to inspect and repair customers' pipes beyond the meter and service lines of the company. In 28 C. J. 594, it is said: "The company is warranted in assuming that the interior system of pipes is sufficiently secure to permit the gas to be introduced with safety." This inference applies "in the absence of any facts upon which to base an inference of duty." Id. The question before this court is whether the allegations made are sufficient to show the existence of any duty owed by the defendant to the plaintiff, and a violation thereof which resulted in damage and injury to the plaintiff. Do the allegations setting up that the pipes and fixtures maintained by the defendant were of sufficient strength and material to properly confine the manufactured gas which plaintiff had been accustomed to use and the defendant had been supplying to the plaintiff through its pipes and fixtures, and the further allegation that without warning to plaintiff, natural gas was substituted by defendant which exerted a great deal heavier pressure in the pipes and fixtures of the defendant than manufactured gas, so as to cause them to leak gas upon the premises of plaintiff, and that such change was the proximate cause of injury to plaintiff, sufficiently show the existence and violation of a duty for which the plaintiff would be liable in the event such action resulted in damage to plaintiff? We think so. Certain duties are inherent in human society. A owes B the duty to so handle his affairs or conduct his business and control the material forces with which he

deals as not to injure the person or the property of B. A violation of this duty is a wrong which may support an action for damages. *Smith* v. *Clarke Hardware Co.,* 100 *Ga.* 163 (28 S. E. 73, 39 L. R. A. 607). Negligence itself is a failure to exercise the degree of care demanded by the circumstances. *Bohler* v. *Owens,* 60 *Ga.* 186. All allegations that certain facts and conditions constitute negligence may in one sense of the word be called conclusions. It is the duty of the court, in construing and acting upon questions presented for determination, to apply to them the rule of reason, and to measure them by the dictates of human experience and enlightened consciences. If A has been purchasing from B explosives of a certain kind and character which he, B, knows is being handled by A in a usual and well-known manner, can it be said that, if without warning A of the increased hazard resulting therefrom, B should sell and deliver to A a great deal more powerful explosive, which is more likely to cause injury when handled in the accustomed way than the other explosive, he has violated no duty owing to B and is not responsible for resultant injury? It is alleged in the petition that without warning the gas company substituted in the place of the kind of gas it had been accustomed to furnish a gas that was a great deal more powerful and harder to handle, and that it exerted a heavier pressure on the pipes and fixtures containing it than the former gas, and that, because of such new gas being furnished, leaks occurred in the pipes and fixtures which otherwise would not have occurred. It is elementary that if injury occurs under such facts, the gas company is liable. It is certainly true that a gas company owes the duty to the general public to so operate its business and maintain its pipes as to prevent the escape of gas therefrom in such quantities as to become dangerous to life or property. Does the fact that the customer or consumer may own the pipes within his dwelling relieve the gas company of the duty of notifying him of a great increase of the pressure put upon such pipes, when the pipes which have been installed by the customer were sufficient to contain and prevent from escaping the original gas furnished him but which might not sustain the newly furnished gas? Certain States, notably Indiana, have statutes providing that natural gas companies shall conduct gas only through sound wrought or cast-iron pipes tested to a pressure of at least 400 pounds to the square inch, and that such

companies shall not conduct gas through such pipes and casings at a pressure exceeding 300 pounds per square inch, and a failure to so test such pipes shall be a violation of the statute. Alexandria Mining &c. Co. v. Irish, 16 Ind. App. 525 (44 N. E. 680). We can not say that under the allegations made the defendant was under no duty to warn the plaintiff of the alleged increased risk, or, failing in that, to inspect the plaintiff's pipes and fixtures itself. This seems to us to be dictated by every concept of right action and consideration. Negligence, as defined in *Southern Ry. Co.* v. *Chatman*, 124 *Ga.* 1036 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675), is "the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do." We think the duty existed and was sufficiently alleged.

■ Was the omission to warn or to inspect the pipes when the gas exerted a heavier pressure and thus caused its escape the proximate cause of the injury? No subject has caused more discussion and seeming variety of opinion than has that of "proximate cause." Powell, J., in the case of *Atlantic Coast Line* v. *Daniels*, 8 *Ga. App.* 775 (70 S. E. 203), has given one of the most lucid discussions on the subject that we have ever read. Granted that the placing of the natural gas in the pipes by the defendant caused them to leak gas which they otherwise would not have done, was this escaping gas the proximate cause of the injury, without any other efficient, intervening cause which would thus relieve the gas company from liability? Was the act of the plumber in striking the match the proximate cause, or was the escaping gas the proximate cause of the injury? "The proximate cause of an injury may not even in juridic contemplation, be sole and single." *Atlantic Coast Line Co.* v. *Daniels*, supra. Quoting again from that opinion: "Now if it appears that the injury resulted from a condition into which there entered both negligent and non-negligent activities, and that according to the laws of human probability the injury would not have resulted but for the negligent activities, and that when the negligent and non-negligent activities united, the injury naturally followed, the law disregards the non-negligent activities as causes, considers them as but a part of the normal environment, and considers the negligent actor as disturbing that normality, and, therefore, as being the juridic cause of the in-

jury." The petitioner alleged that the escaping gas produced a slight odor, and that she sent for a plumber to find the leak and correct it, that the plumber, in the manner which was universal and which was the ordinary way of discovering leaks of manufactured gas, struck a match, that under the old system,—that is if the ordinary manufactured gas was then being used, there would have been no danger. It is insisted by defendant that this conduct is such contributory negligence on the part of the plaintiff or her agent as will bar a recovery. It is true that the decision in *Weyman* v. *Maynard*, 24 *Ga. App.* 94 (100 S. E. 25), is seemingly contradictory to what is here being held. In that case there was no question as to the degree of the explosiveness of the gas being used, as there is in the present case. There was no allegation in that case that the plaintiff was not fully acquainted with the kind and character of the gas then being used. There was no allegation, as there is in the present case, that a *slight* odor of escaping gas was detected. There was no further allegation that the plumber or other person was searching for the leak in the usual and customary manner, nor was there any allegation that the injury was caused by the kind and character of the gas and that had different gas been used no injury would have occurred. These allegations we think make a different case from the *Weyman* case. This case is being determined on demurrer, and this court is unwilling to say that such allegations will not be considered. They are peculiarly matters for the jury. "It is not necessarily negligence per se to use a match or light to discover a point where gas is escaping." Whether a person is negligent in using a lighted match in searching for a gas leak depends on whether he has notice that the gas is escaping in large quantities, or whether a man of ordinary prudence, placed in the same situation, would believe that there was danger of an explosion; and such a question is one for the determination of the jury. Pine Bluff Water & Light Co. *v.* Schneider, 62 Ark. 109 (34 S. W. 547, 33 L. R. A. 366); Stoner *v.* Pennsylvania Fuel Supply Co., 40 Pa. Super. Ct. 599." Dowler *v.* Citizens Gas-Light Co., Ann. Cas. 1914C, 341, 352n. The cases cited and quoted from in *Powers* v. *Atlanta Gas-Light Co.*, 48 *Ga. App.* 47 (172 S. E. 84), by the writer of this opinion, and the case itself, are cited as authority for the question here decided. We might add the cases of Bartlett *v.* Boston Gas-Light Co., 122 Mass.

209, and Plonk *v.* Jessop, 178 Pa. 71 (35 Atl. 851). Under the foregoing rulings the court erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

### ON MOTION FOR REHEARING.

We wish to make only one observation in answer to counsel's motion for rehearing. It is true that the filing of an amendment does not of itself make such amendment a part of the record of the case; yet where it appears, as in the present case, that the amendment was tendered and a formal order passed directing that it be filed subject to the right of the defendant to demur further or renew its demurrer theretofore filed, and where the defendant did demur to the petition "as amended," and the court passed an order sustaining the demurrer to the "petition as amended," such amendment will be treated as having been formally allowed, although no order "formally allowing" the same is shown. *Rehearing denied.*