36488. EXECUTIVE COMMITTEE OF THE BAPTIST
CONVENTION *v.* FERGUSON.

DECIDED FEBRUARY 28, 1957—REHEARING DENIED MARCH 28, 1957.

*Thomas B. Branch, Jr., James A. Branch,* for plaintiff in error.
*Jefferson L. Davis, Wilson, Branch & Barwick, M. Cook Barwick,* contra.

FELTON, C. J. ■ The evidence authorized the verdict. The plaintiff testified that after she had been put to bed in her hospital room, she was given a pill or tablet, that it was not long until she went to sleep, and that the next thing she remembered was that she woke up when she hit the floor.

Mrs. Idele Gurley, the plaintiff's daughter, testified in part: "Q. Did you have occasion to go to the Georgia Baptist Hospital with your mother when she was going there for some surgery in 1953? A. Well, I entered my mother; I was with her. Q. Did you enter her as a charitable patient or as a paying patient? A. Paying patient. Q. I will ask you if you were in the hospital, in and around her room when they put your mother to bed? A.

Yes, I was with her. Q. Were you there after she went to sleep? A. No. Q. Was she still awake when you left there? A. Yes. *Q. I will ask you what her general condition was as to being restless or calm? A. She was very restless. Q. How was that evidenced? A. Well, mother had never been in the hospital before and she was just nervous over going.* (Emphasis by the court.) Q. Were you there when they gave her some medication of some kind? A. No. Q. I will ask you if you had a conversation with Dr. Albert Evans in the presence of a nurse that night before you left the hospital? A. I did. Q. Mrs. Gurley, do you know the name of the nurse that was there with Dr. Evans? A. No, sir; I don't. Q. Was she making the rounds with Dr. Evans? A. She was with Dr. Evans when he was making his rounds. Q. Had you seen her before there in the hospital? A. No; I can't recall that I had. Q. What sort of uniform did she have on? A. Well, I didn't notice. Q. Was she a private duty nurse assigned to your mother? A. No. Q. In other words, she was just going around the hospital from room to room with the doctor, is that correct? A. Yes, sir. Q. Now, did she have any emblem on her blouse or on her shirt to indicate that she was a nurse at the hospital? A. Well, I didn't notice. She was just the nurse with Dr. Evans. Q. Did she have a chart with her, a board with her? A. Yes; she had her chart. Q. Now, I will ask you what conversation you had with Dr. Evans in the presence of the nurse and what he told her? A. Well, my sister asked for rails earlier when we entered mother in the afternoon—I say this was around 2:30 or 3 o'clock—I don't remember definitely, and I visited mother that evening, that night, and I noticed the rails were not up to her bed like we had asked for, and I told Dr. Evans that we had asked for the rails and they had not put them up and we wanted them; and he said he would be glad to have it done. And he turned to the nurse and asked her to arrange for it. Q. What did the nurse say or do? A. Well, I can't recall that she said anything. Q. You don't recall what the nurse said there? A. No; I don't. Q. Do you know what the nurse was doing at the time? A. Well, she was with Dr. Evans. Q. Did Dr. Evans or not direct his remarks to her to put up the rails? A. He turned to her and he told her to arrange for the rails."

Dr. Albert L. Evans testified that the plaintiff was his patient and that he visited her after her admission to the hospital. He further testified: "Q. Did you have a conversation in the hospital regarding guardrails for her bed with one of her daughters, Dr. Evans? A. Yes; I talked to her daughter, Mrs. Gurley. Q. Did she request that you have those rails put up? A. She did. Q. Doctor, you never did enter on the chart a request or an order for guardrails did you? A. No, sir; I didn't. Q. Are all orders of doctors put on the record? A. They should be but they aren't. Q. To the best of your recollection did you comply with the lady's request that the rails be put on her bed? A. I don't remember exactly. All I remember was talking to Mrs. Gurley about it one evening when I went over to make my rounds, and I told her if she wanted them she could have them, but I did not put it on the chart. Q. Do you recall whether your nurse was with you at the time you had this conversation or not? A. No, sir; I don't recall whether it was a nurse or not. Usually when we visit our patients there is. But Mrs. Gurley very definitely said there was, and I just don't remember."

We cannot agree with the defendant that the heart of the plaintiff's case lies in the allegations that the defendant abandoned the plaintiff in a restless state of partial anesthesia and did not attend her during the night.

The evidence authorized the finding that one of the plaintiff's daughters had requested the defendant to place side rails on the plaintiff's bed; that later another daughter noticed that the side rails had not been placed on her mother's bed as previously requested, and requested of Dr. Evans that said rails be erected; that Dr. Evans ordered the side rails erected and directed a nurse making his rounds with him to have the side rails erected. After the side rails were ordered by the doctor, the hospital was under a duty to the plaintiff to erect them for whatever reason the doctor may have ordered them erected. The defendant failed in this duty. The ultimate purpose of having the side rails erected was to prevent the plaintiff from falling off the bed under any circumstances. Thus, the jury was authorized to find from the evidence that the hospital owed to the plaintiff a duty to erect side rails on her bed, that the defendant failed to perform

this duty, and that as a result thereof, the plaintiff was damaged. Since the evidence authorized the verdict, the court did not err in denying the defendant's motion for a judgment notwithstanding the verdict.

■ Special ground 1 of the amended motion for a new trial complains of the following charge: "Now, gentlemen, I charge you if you believe defendant was negligent in some one or more or in all respects and particulars named in plaintiff's petition and if you believe as a result of such negligence, if you believe such negligence existed, the plaintiff was injured, and if you believe that the plaintiff was not guilty of such negligence as under these instructions would bar a recovery and you believe that the injury to the plaintiff was not due to misfortune or accident, then I charge you the plaintiff would be entitled to recover in this case. . . If you find that the defendant was negligent in all, some or any of the particulars charged by the plaintiff in her petition, then you would consider and determine as to whether or not such negligence, if it existed, was a direct and proximate and producing cause of injury to the plaintiff. The proximate cause of an event is that cause which, in natural and continuous sequence, unbroken by any new, independent cause, brings about an occurrence, produces an event, and without which the event or occurrence would not happen. . . So, gentlemen, I charge you if defendant was not negligent in any of the particulars charged in the declaration, or if negligent such negligence did not cause the injury of the plaintiff, or if the only cause of the injury of the plaintiff was the negligence on her part, or if the plaintiff and defendant were equally negligent, or if the injury was due to misfortune or accident, or if the plaintiff failed to exercise ordinary care to avoid the consequences of defendant's negligence, if any, under instructions given you, then there could be no recovery in this case, and that would end your deliberation and you would return a verdict for the defendant."

It is contended by the plaintiff in error that this charge submitted to the jury a specification of negligence which had been stricken on demurrer. It is further contended that the ruling on this special demurrer striking that specification of negligence established as the law of the case that the specification stricken did not constitute an actionable act of negligence.

The specification of negligence which was stricken on special demurrer was as follows: "A. In inducing upon the plaintiff a state of partial anesthesia knowing that the defendant would not attend your petitioner during the night." We cannot see how the charge complained of could have possibly submitted the stricken specification of negligence to the jury. In his charge the judge stated the specific acts of negligence relied on by the plaintiff, and the stricken specification was not contained in that statement. After this statement the court further charged, "Now, gentlemen, those are the acts of negligence complained of which are submitted to you for your consideration. And when you come to pass upon the question as to whether or not the defendant was negligent you would be confined to these specifications in which plaintiff charges negligence. You would not be authorized to go outside and inquire whether defendant was or was not negligent in some other way, means or manner than thus alleged in the petition. The law says that if the plaintiff recovers at all, she must recover upon her case as she presents it to the court and jury in her petition."

There was no "law of the case" established by the mere sustaining of a special demurrer to a paragraph and striking that paragraph. If any law was established by such action, it was the "law of the paragraph". "The effect of sustaining a special demurrer is to delete the objectionable matter from the petition." *Womack* v. *Central Ga. Gas Co.*, 85 *Ga. App.* 799 (8c) (70 S. E. 2d 398).

■ Special ground 2 of the amended motion for new trial complains of the following charge: "I charge you a private hospital operated for pecuniary profit owes to the patient the duty to use reasonable care and reasonable skill and diligence in caring for such patient. It is the duty of those in charge of the hospital to give the patient reasonable care and attention, and to have that knowledge of the necessity of the particular case which would result from such care and attention and from the possession of ordinary skill in the treatment of the particular patient.

"A private hospital operating for pecuniary gain which undertakes to care for its patients and supervise and look after them is under a duty to exercise such reasonable care in looking after

and protecting the patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after the patient, may require. The above duty extends to safeguarding and protecting the patient from any known or reasonable apparent danger from himself which may be due to his mental or physical incapacity, and the hospital is further charged with the duty to use ordinary and reasonable care to prevent any danger because of said mental or physical incapacity, of the patient."

It is contended by the plaintiff in error that the charge was erroneous because there was no evidence introduced to the effect that the defendant operated its hospital for "pecuniary gain", but to the contrary "that as shown by its charter set forth in the Acts of the Legislature of 1830, page 72, of which the court takes judicial notice, movant was incorporated as a purely eleemosynary, religious institution and that it would not be authorized to operate a hospital or any other institution for pecuniary gain and for the court to charge that it did so was erroneous, illegal, prejudicial and harmful and requires the grant of a new trial." The plaintiff was a paying patient. A charity hospital owes the same duty to a paying patient as does a hospital operated for pecuniary gain and the same law is applicable in both instances. The only difference would be from what funds an eventual judgment for the plaintiff would be satisfied. *Morton v. Savannah Hospital*, 148 *Ga.* 438 (96 S. E. 887). Since which funds of the defendant would be eventually subject to levy under a plaintiff's judgment is of no concern to a jury, the charge complained of could not have harmed the defendant in any way.

■ Special ground 3 of the amended motion complains that the following evidence was admitted over objection: "I told Dr. Evans that we had asked for the rails and they had not put them up and we wanted them; and he said he would be glad to have it done. And he turned to the nurse and asked her to arrange for it." "Q. Did Dr. Evans or not direct his remarks to her to put up the rails? A. He turned to her and he told her to arrange for the rails."

The movant contends that this evidence was inadmissible because there was no evidence to show that the nurse to whom

Dr. Evans directed his remarks was an agent of the hospital. This contention is without merit. The evidence shows that the nurse was dressed in a nurse's uniform and accompanied Dr. Evans when he made his call on the plaintiff in her room at the hospital and that the nurse was carrying a chart. These circumstances were sufficient to authorize the jury to find that the nurse was an agent of the hospital. "Existence of an agency may be established by proof of circumstances, apparent relations, and conduct of the parties." *Larkins* v. *Boyd,* 205 *Ga.* 69, 72 (52 S. E. 2d 307). See also *Equitable Credit Corp.* v. *Johnson,* 86 *Ga. App.* 844, 848 (72 S. E. 2d 816).

■ Special ground 4 of the amended motion complains of the following charge: "This case being based upon the alleged negligence of the defendant it becomes necessary for you to understand what the law means by negligence. And negligence means simply the absence of or the failure to exercise that degree of care and caution which the law says under the circumstances should have been exercised. In other words, negligence is the absence of or the failure to exercise legally required care." The complaint is that the charge did not define the meaning of ordinary care as applied to hospitals. The complaint is not that the charge given was erroneous in and of itself but that the charge was erroneous because a fuller charge on the subject was not given. A correct charge is not subject to the complaint that it is erroneous because it does not contain another correct and applicable principle of law.

The court did not err in denying the motion for a judgment notwithstanding the verdict or in denying the amended motion for new trial.

*Judgments affirmed. Quillian and Nichols, JJ., concur.*