## 40983. LAMB v. THE REDEMPTORIST FATHERS OF GEORGIA, INC.

492

Decided March 17, 1965—Rehearing denied April 2, 1965.

*Gleason & Brown, Burton Brown,* for plaintiff in error.
*Shaw, Stolz & Fletcher, G. W. Langford, Irwin W. Stolz, Jr.,* contra.

Frankum, Judge. John W. Lamb sued The Redemptorist Fathers of Georgia, Inc. in the Superior Court of Walker County for damages to recover medical expenses incurred by him for treatment of his minor son, Bobby Ray Lamb, and for the loss of services on account of personal injuries sustained by plaintiff's son under the following alleged circumstances as set forth in his petition as finally amended: The defendant maintains and operates on its premises located in Walker County a swimming pool to which it sells to the public, for a monetary consideration, swimming privileges. Defendant has maintained and operated such swimming pool for a long period of time. It is thoroughly familiar with the common practice of its customers, using the pool, in "leaving bottles, containers, opened tin cans and other dangerous objects around the pool," and it is also familiar with the further practice of such customers in throwing litter of a similar description in the grass growing around the edge of the pool, and defendant knew that broken bottles, tin cans and other dangerous objects likely to cut the bare feet of anyone stepping thereon were often thrown around the pool and concealed in the grass. "On the tenth of July, 1961, plaintiff's son, after paying his admission charges for the privilege of using defendant's pool, entered on the premises of the defendant in a bathing suit and

without shoes on his feet. Grass was growing around such swimming pool for a distance of over fifty feet from the pool's edge and this grass had been allowed to grow up to six to eight inches above the ground and was in an unkempt and shabby condition. Concealed under the aforementioned grass and approximately 40 feet south of the southeast corner of the pool was an open tin can with the sharp razor-like edge extending upward and, as plaintiff's son was walking from this grass toward the concrete walk around the pool, he stepped on the razor-like edge of the can with his left foot and severely cut his said foot and sustained severe and permanent injuries thereto." The plaintiff's son did not know of the presence of the can concealed in the grass, and its presence so concealed constituted a hidden danger unknown to the plaintiff's son but which was known or should have been known by the defendant. It is alleged in the petition that the defendant was negligent in failing to exercise ordinary care in keeping the premises safe, in failing to make daily inspections, in failing to warn the plaintiff's son of the dangerous condition of the premises, in failing to rake the concealed objects out of the grass, and in leaving such objects lying around and concealed. Plaintiff alleged that the defendant is a charitable institution maintaining a parochial school on the premises in question, together with other facilities for the purpose of providing and maintaining recreational programs suited to the welfare of the students of the school and to those members of the public who desire to use such facilities for hire; that in connection with the operation of its parochial school, the defendant, through its priests and nuns as teachers, conducts religious services in the Catholic faith, and the property occupied by the defendant "is dedicated and devoted exclusively to charitable, religious, and educational purposes"; that, notwithstanding the defendant's charitable purpose, it owns property in Walker County held for noncharitable purposes, to wit: A certain described public liability insurance policy which was in force and effect on the date the plaintiff's son sustained his injury, the existence of which is essential to the plaintiff's cause of action.

The defendant demurred to the petition as originally filed; the court sustained certain grounds of the demurrer with leave to

amend; the plaintiff twice amended, and the defendant renewed its demurrers and filed additional grounds after each amendment. To the petition as finally amended the defendant filed a general demurrer and eight grounds of special demurrer. The court sustained all grounds of demurrer with leave to amend. The plaintiff declined to amend, the court dismissed the petition, and the exception here is to that judgment.

■ In his bill of exceptions the plaintiff in error attempts to assign error on the ruling of the court sustaining certain of the defendant's special demurrers respecting the plaintiff's allegations as to the extent and location of the grass growing around defendant's swimming pool. The record shows that the plaintiff amended his petition to meet the order of the court in this regard, and having done so, he waived his objection to the order and may not now take exception thereto. *Smith v. Bugg*, 35 Ga. App. 317 (1) (133 SE 49); *Bell v. Camp*, 109 Ga. App. 221 (1) (135 SE2d 914).

■ The petition alleges that the defendant was negligent in that it permitted tin cans, bottles, and other debris to accumulate in the grass around its pool and failed to inspect the grass so as to ascertain the presence of and remove sharp objects of a dangerous nature thrown or accumulated around the pool during the course of its daily operations. In every action against a landowner based on his negligent failure to maintain the premises in a safe condition, actual or constructive knowledge of the landowner of the unsafe condition is an essential element of the cause of action. Thus it is essential in this case that knowledge on the part of the defendant of the presence of the tin can concealed in the grass be shown. Here the petition alleges that the dangerous instrumentality concealed in the high grass "was known to the defendant," or that "it was its duty to know in the exercise of ordinary care." This, of course, is merely an allegation of constructive knowledge, but it is sufficient if the specific facts otherwise alleged are such as to raise a duty on the part of the defendant to know. *Pacetti v. Central of Ga. R. Co.*, 6 Ga. App. 97, 101 (1) (64 SE 302). Paraphrasing what was said by Judge Powell in that case: Normally, perhaps, the operator of a place of public resort, such as a swimming pool,

would be under no duty to anticipate the presence on the ground, whereon the patrons are invited to come, of sharp objects or that a patron would likely step upon such an object and cut his foot. But, circumstances alter cases, and under the facts set forth in the petition in this case, it may be said that the defendant permitted an unusual situation to exist on its premises. Those allegations show that the defendant had permitted the grass around its pool to grow to a height of six to eight inches; it did not grow to this height overnight but did so over a period of several days at least; the defendant knew that it was the common practice of its patrons, the members of the church and the students in its private school, to leave bottles, containers, opened tin cans, and other dangerous objects around the pool, and it was also familiar with the practice of its patrons of throwing litter of a similar description into the grass around the pool. If these factual allegations be proved, then a jury would be authorized to find that the knowledge on the part of the defendant of this practice of its patrons, together with its knowledge of the unkempt condition of the grass growing around the pool, coupled with the common knowledge possessed by every person of which the defendant was bound to take notice that objects such as bottles and tin cans deposited in such high grass could not be readily observed except by one making a careful inspection, imposed upon the defendant the duty of making such an inspection of the area and of removing from the grass any dangerous objects found to be in a place where its customers were invited or reasonably expected to be. A jury would be further authorized to find that the duty to make inspections of the area and to remove dangerous objects devolved upon defendant, if not before, certainly after, the grass had reached such height as to conceal the dangerous objects deposited therein, and that this condition had existed for several days, and from this, the jury would be authorized to find that defendant had constructive knowledge of the presence of the tin can on which the plaintiff's son stepped, and that the defendant was negligent in failing to either remove the can or warn the plaintiff's son of its presence. Under these allegations it would be a question for a jury to determine whether or not the defendant was negligent in failing

to make daily inspections of its premises or, upon the failure to make such inspections, to warn the plaintiff's son that it might be dangerous for him to walk through the grass, and it would also be a jury question whether the failure of the defendant to inspect or warn, if negligent, was the proximate cause of the plaintiff's son's injuries.

This case is distinguishable on its facts from *Jones v. West End Theater Co.,* 94 Ga. App. 299 (94 SE2d 135), relied on in the dissenting opinion of Judge Pannell. The decision in that case turned chiefly, if not entirely, on the failure of the plaintiff to allege in either count that the beer can on which he stepped had been on the ground a sufficient length of time to afford the defendant constructive notice of its presence, it being conceded that actual notice was not alleged under the facts set forth in the petition there. In this case it was wholly immaterial whether the tin can on which the plaintiff's son stepped had been concealed in the grass for any particular length of time, because the fact that the defendant permitted the grass to grow to the height alleged in the petition so as to conceal objects deposited therein, coupled with the alleged knowledge on the part of the defendant of the habit of its patrons of depositing dangerous objects in the grass, imposed upon the defendant the duty of knowing that some dangerous objects might be concealed in the grass (though not necessarily the particular object which inflicted the injury), and of either warning the plaintiff's son and others not to walk barefooted therein, or of keeping the grass cut, or of inspecting the area for and removing such objects therefrom.

The petition alleges that the tin can was concealed under the grass approximately 40 feet south of the southeast corner of the pool, and that the plaintiff's son had paid his admission charge and was walking from this grass toward the concrete walk around the pool when he stepped on the can which cut his foot and inflicted the injuries resulting in the loss to plaintiff upon which this suit is based. Giving these allegations a natural and reasonable construction, as we are authorized to do, even on general demurrer, *Georgia Power Co. v. Leonard,* 187 Ga. 608, 614 (4) (1 SE2d 579), it is not apparent that the plaintiff's son had deviated from the normal course to be taken by him in enter-

ing the pool from the place where he paid his admission charge, or that he was at a place where he was not reasonably expected to be. The duty imposed upon the defendant of keeping the premises safe for invitees extended not only to those portions of the premises which the invitees were expressly invited to use, but also to those portions which the defendant might reasonably anticipate that invitees *would* use or to which, from the particular situation, it would reasonably have appeared to the invitee that the invitation extended. *Georgia Power Co. v. Sheats*, 58 Ga. App. 730 (1a) (199 SE 582). See also *Shannon v. Bigelow-Sanford Carpet Co.*, 96 Ga. App. 458 (100 SE2d 478). The petition was not subject to general demurrer.

To the petition, as finally amended, the defendant filed eight grounds of special demurrer attacking the allegations of paragraphs 7, 8, and 9. Those paragraphs of the petition contain the allegations of the petition respecting the ownership by the defendant of an insurance policy insuring it against liability for bodily injury to third persons, and allege that the policy is a noncharitable asset of the defendant, a charitable institution, which, under the laws of Georgia, is immune from tort liability except to the extent that it possesses noncharitable assets. Paragraph 9 alleges that the existence of this asset is essential to the plaintiff's cause of action. The eight grounds of special demurrer attack these allegations because, it is contended, they are irrelevant and immaterial to any issues in the case, since it appears from the petition that the defendant had other noncharitable assets in the form of admissions charged to its swimming pool; that they are highly prejudicial to the defendant and seek to inject into the case the question of liability insurance in a tort action where there is no basis for doing so; that they constitute erroneous conclusions of law; that plaintiff's cause of action is not dependent upon the existence of such liability insurance policy, and that the allegations afford no basis for any relief sought by the plaintiff in the case. The trial court sustained all of these grounds of demurrer, and that judgment is one assigned as error in the bill of exceptions.

In the recent case of *Morehouse College v. Russell*, 219 Ga. 717 (135 SE2d 432), the Supreme Court, in response to four

questions certified to it by this court, approved the decision of this court in *Cox v. DeJarnette*, 104 Ga. App. 664 (123 SE2d 16), and completely answered all of the contentions made by the grounds of special demurrer of the defendant respecting the allegations of the petition as to the defendant's liability insurance coverage. It would serve no useful purpose to further lengthen this opinion by discussing the holding of the Supreme Court in that case, since a reading of what was there said by Presiding Justice Head, speaking for the Supreme Court, will plainly and concisely demonstrate that none of the grounds of special demurrer is meritorious. Following the ruling of the Supreme Court in that case, we must hold that the judgment of the trial court sustaining those grounds of special demurrer was erroneous.

*Judgment reversed. Nichols, P. J., Jordan and Russell, JJ., concur. Bell, P. J., Hall and Eberhardt, JJ., concur as to Divisions 1 and 2 of the opinion and concur specially as to Division 3. Felton, C. J., and Pannell, J., dissent.*

EBERHARDT, Judge, concurring specially. There was a demurrer seeking to have stricken from the petition the inclusion or attaching of a copy of the public liability policy of insurance which the defendant, a charitable institution, carried. The demurrer was overruled and that ruling is urged as error.

Defendant's position is that since the petition alleges that it was engaged in the commercial activity of operating the swimming pool for cash admissions it was neither necessary nor proper to include, attach or make reference to the matter of insurance.

In *Morton v. Savannah Hospital*, 148 Ga. 438 (96 SE 887) the court dealt with the question of whether a corporation chartered as the "Savannah Poor-house and Hospital . . . to conduct only an institution primarily or altogether eleemosynary in character, for the public benefit," could be sued by a patient who paid for his hospital care and suffered injury because of the negligence of its employees. It was held that the hospital could be sued, although it did not operate for pecuniary gain or benefit to its managers, officers or others, and any recovery obtained would be restricted to income derived from noncharitable sources

since the general trust and charitable funds could not be depleted by subjecting them to liability for negligence. The basis for the ruling was that it appeared that the defendant was engaged in an activity by which it received noncharitable income—the pay of some of its patients, including the plaintiff. No other noncharitable asset was mentioned in the petition. No liability insurance was mentioned or pleaded. *Morton* was followed in *Bazemore v. Savannah Hospital,* 171 Ga. 257 (155 SE 194), *Robertson v. Executive Com. of the Baptist Convention,* 55 Ga. App. 469 (190 SE 432), *Young Women's Christian Assn. v. Barnett,* 93 Ga. App. 322 (91 SE2d 381); *Executive Com. of the Baptist Convention v. Ferguson,* 95 Ga. App. 393 (98 SE2d 50), and perhaps others, though it was recognized that if the charitable institution had no noncharitable income or property it could not be held. *Butler v. Berry School,* 27 Ga. App. 560 (109 SE 544). In keeping with the principle of *Morton* productive property held by a charity is taxable. *Linton v. Lucy Cobb Institute,* 117 Ga. 678 (45 SE 53).

Defendant urges that when it appears from the petition that it was engaged in an activity from which it received noncharitable income this deprives the defendant of its charitable immunity from liability for negligent injury that may be inflicted on one of its customers or patrons and that there is no further reason or necessity for any pleading of noncharitable assets for the purpose of showing the right to maintain the action, relying upon *Morton* and cases following it. It also urges that a different conclusion is not required by the rulings in *Cox v. DeJarnette,* 104 Ga. App. 664 (123 SE2d 16) and *Morehouse College v. Russell,* 219 Ga. 717 (135 SE2d 432), asserting that in *Cox* the plaintiff was injured when slipping on the steps of a church, that in *Morehouse College* the suit was based upon the negligence of a college while engaged in a purely charitable function, and that under these circumstances it could not be held that *Cox* and *Morehouse* were intended to authorize the pleading of the existence of a liability insurance policy in *all cases against all charities.*

There is much logic in defendant's position, for if the courts in *Cox* and *Morehouse* did intend that in all cases against all

charities it would be proper to plead the existence of a liability insurance policy it would obviously have the effect of placing charities in a far worse position in the defense of the action than the ordinary noncharitable defendant, against whom it is well settled that it is improper to mention the existence of insurance in the pleadings or the evidence. Indeed, it has been held that the trial court should require a recasting of pleadings to eliminate any reference to insurance or other prejudicial matter. *Shaw v. Miller*, 215 Ga. 413, 414 (110 SE2d 759); *Perkins v. Publix Theatres Corp.*, 47 Ga. App. 641 (7) (171 SE 147); *McRee v. Atlanta Paper Co.*, 84 Ga. App. 181 (65 SE2d 832); *Rodgers v. Styles*, 100 Ga. App. 124 (110 SE2d 582); *Ray Clanton's East Ga. Motors, Inc.*, 100 Ga. App. 650 (112 SE2d 218); *Shook v. Southern R. Co.*, 101 Ga. App. 128, 130 (113 SE2d 155); *C.T.C. Finance Corp. v. Longmire*, 106 Ga. App. 326 (126 SE2d 714); *Shapiro Packing Co. v. Landrum*, 109 Ga. App. 519, 523 (136 SE2d 446). It would be little short of judicial sciamachy to suppose that when a liability policy is pleaded or attached to the petition the jury is likely to distinguish it from an accident policy. "The voluntary introduction by the plaintiff of 'the insurance company' into the evidence was calculated to suggest to the jury that any damages found in favor of the plaintiff would be paid by the insurance company and not by the defendant, and was highly prejudicial to the defendant's cause. . ." *Decatur Chevrolet Co. v. White*, 51 Ga. App. 362, 363 (180 SE 377). "If the damage done by the mention of insurance cannot be remedied a mistrial must be granted. . ." *Steinmetz v. Chambley*, 90 Ga. App. 519, 528 (83 SE2d 318). If counsel mention it in argument to the jury it is ground for mistrial. *O'Neill Mfg. Co. v. Pruitt*, 110 Ga. 577, 579 (36 SE 59).

Charitable immunity and governmental immunity have been the law's "Gold Dust Twins" since the earliest days of the common law. Doubtless they originated in what was conceived to be a necessity to preserve the ability of the church and the King's government to perform their functions. There is little difference in the rationale of the doctrines. But when a governmental agency engages in nongovernmental functions it is generally held subject to liability for injury which may result. For

example, there is the well settled proposition that a municipality engaged in the maintenance of its streets, or in the distribution of electricity for profit may be sued by one who is injured through negligence of the municipality or its agents in the performance of those functions. When it appears from the petition that the activity of the defendant complained about was nongovernmental in character, the suit is maintainable.

The General Assembly has authorized political subdivisions of the State to procure liability insurance and to the extent of any insurance carried has removed governmental immunity as a defense; but recognizing that the reference to insurance in a law suit would be prejudicial to the defense of any action where the liability may be covered thereby, it is specifically provided that "No attempt shall be made in the trial of any action brought against a municipal corporation, county or any other political subdivision of this State to suggest the existence of any insurance which covers in whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if the verdict rendered by the jury exceeds the limits of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limits stated in the insurance policy." *Code Ann.* § 56-2437. Here is a legislative declaration of public policy against reference to insurance in this type of situation. A similar result would seem to obtain in suits against charities under the doctrine of *Morton,* unless the courts have intended and held otherwise in *Cox* and *Morehouse College.* It may well be that they did not so intend and that the ruling was intended, as defendant contends, to apply only when it does not otherwise appear that the suit could be maintained. Language in *Cox* lends credence to this position when it was there asserted: "But where, as here, the existence of the cause of action is based upon, *indeed is dependent upon,* the liability policy as a noncharitable asset, it is essential that it be set forth in the petition." I should be content to hold that such was the effect of *Cox,* but it would take a strained construction of the answer to the third certified question in *Morehouse College* to reach that conclusion, and we are bound by it. Perhaps the remedy may lie in the amending of *Code Ann.* § 56-2437 to include charities along with governmental subdivisions.

We do not reach the question of whether it is wise to continue charitable or governmental immunity. Many of the jurisdictions have abolished it altogether. The area of governmental immunity is diminishing. A study of that matter may reveal the wisdom of taking that course, either legislatively or by an overruling of the doctrine. See Friedman, Charitable Institutions—A Re-Examination of the Doctrine of Immunity from Tort Liability, 24 G.B.J. 201. But, as yet, we have not launched out upon a program of social insurance, and until we do, it would seem that the policy of keeping this matter out of pleadings as well as evidence in the trial of a law suit, recognized both by the courts and the legislature, should be observed.

On the basis of *Morehouse* only I must agree with the majority that the overruling of the demurrer was proper.

I am authorized to state that Bell, P. J., and Hall, J., join in this special concurrence.

PANNELL, Judge, dissenting. After discussing the facts and the law applicable thereto, the majority reach the conclusion in the present case that "under these allegations it would be a question for a jury to determine whether or not the defendant was negligent in failing to make daily inspections of its premises or, in the absence of such inspections, to warn the plaintiff's son that it might be dangerous for him to walk through the grass, and it would also be a jury question whether the failure of the defendant to *inspect* or *warn,* if negligent, was the proximate cause of the plaintiff's son's injuries." The majority then attempt to distinguish the case of *Jones v. West End Theater Co.,* 94 Ga. App. 299 (94 SE2d 135) on the ground that that case turned "chiefly, if not entirely" on the failure of the plaintiff in that case to allege that the beer can on which he stepped had been on the ground a sufficient length of time to afford constructive notice of its presence. This is a correct statement, but it does not distinguish that case from the present one for the very simple reason that the identical elements upon which the court in the present case sustains the cause of action were also present in *Jones v. West End Theater Co.* In the *West End* case, paragraph 29 of the amended petition, which was a part of both counts, alleged: "Petitioner shows that defendant's failure to provide safe stairs, paths, walkways or other designated routes

or accessways over which your petitioner might walk from the concession stand in safety, *coupled with defendant's failure to warn your petitioner of the likelihood of foreign matter upon the floor or pavement of the theater area,* constituted a total disregard of the rights of your petitioner, and other persons invited to the said theater and its concession stand, and was negligence."

The grounds of negligence in paragraph 30 of the petition as amended (both counts) were: "(c) In failing to adequately light the theater area so that your petitioner could walk between the parked cars and up and down the terraces and/or parking ramps in safety. (d) In failing to provide adequate lights along the terrace or parking ramp areas to delineate the variances in the elevations of the individual terraces and/or parking ramps. (e) In failing to inspect the area over which invitees of the theater would likely walk to and from the concession stand and discover and remove articles which would likely cause injury when stepped upon. (f) In failing to warn your petitioner of the presence of said empty beer can, and/or to warn of the likelihood of such an obstacle, which while traversing the darkened and unusually constructed area of the theater would cause injury or harm to invitees thereof."

Thus, we have in the *Jones v. West End Theater Co.* case (1) the custom of throwing things on the premises; (2) the failure to make inspections; and, (3) a failure to warn of the probable presence of beer cans, etc., because of the custom of which the defendant had knowledge. In the *Jones* case, it was poor lighting which hid the article, and in the present case, it was the tall grass which hid the article. *Jones v. West End Theater Co.* is authority for the fact that these allegations, in the absence of an allegation showing how long the item causing the injury was present, are insufficient to set forth a cause of action. This case not being distinguishable for the reasons given by the majority, it is my opinion that it should either be followed or overruled, and not being overruled, it is binding as authority.

I am authorized to state that Felton, C. J., concurs in this dissent.

### ON MOTION FOR REHEARING.

FRANKUM, Judge. In a well reasoned motion for a rehearing the defendant in error contends that this court has overlooked

the fact that the petition fails to allege that the plaintiff's son did not know of the custom and habit of the defendant's patrons of throwing objects into the high grass around defendant's pool, and, therefore, giving the petition a strict construction against the pleader that it must be construed as alleging that the plaintiff's son did know of this custom and that in walking in the high grass he was heedless of the danger occasioned by the presence of objects known by him to have been thrown therein.

It is fundamental that in an ordinary case the plaintiff's contributory negligence is a defensive matter; he is not required to negative, in his pleadings, his own negligence, and unless the petition affirmatively shows that the plaintiff by the exercise of ordinary care could have avoided the defendant's negligence, it is good as against a general demurrer, for such questions are, except in plain, palpable and indisputable cases, always for the jury. *Townley v. Rich's, Inc.,* 84 Ga. App. 772 (67 SE2d 403). What the movant would have this court do in this case is give the petition a strained and unnatural construction, neither required nor authorized by the language thereof, and thus require the plaintiff, contrary to the general rule, to negative his own negligence. This is somewhat analogous to requiring a plaintiff in a suit against a railroad for injuries inflicted upon him while crossing or walking along its track to affirmatively allege that he did not know that the railroad track was a place of danger. This, of course, is not and never has been the law, and this court will not now formulate such a rule contrary to the fundamental rule above stated.

Conceding, therefore, for the sake of argument that the construction of the petition urged by the movant is required, this still does not require the further conclusion urged that the petition thus affirmatively shows that the plaintiff was so contributorily negligent as to be barred of a recovery. As stated in the original opinion, the defendant had a duty to exercise ordinary care in affording the plaintiff a reasonably safe place to walk. The plaintiff had a right to rely upon the defendant's performance of this duty. He alleges that the defendant failed to inspect and rake the grass and to remove the objects therefrom (alleging knowledge by the defendant of the custom on the part of its

patrons of throwing dangerous objects in the grass merely to raise the duty to inspect and rake) and that in omitting to do this the defendant was negligent. If the plaintiff did know of the custom, it should still be left to a jury to determine whether the plaintiff would be barred from a recovery by his failure to exercise ordinary care.

*Rehearing denied.*