### 25669. MULL v. AETNA CASUALTY & SURETY COMPANY et al.

PER CURIAM. On further consideration of the record in the present case, this court has reached the conclusion that the petition for writ of certiorari was improvidently granted and, accordingly it is

*Dismissed. All the Justices concur, except Nichols and Felton, JJ., who dissent.*

ARGUED APRIL 13, 1970—DECIDED MAY 8, 1970—
REHEARING DENIED JUNE 25, 1970.

*Ross & Finch, Ellis Ray Brown, Claude R. Ross, Mundy, Gammage & Cummings, E. Lamar Gammage, Jr., William W. Mundy,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, John C. Gray, B. D. Murphy,* for appellees.

FELTON, Justice, dissenting. In my opinion, the writ of certiorari was properly granted and the judgment of the Court of Appeals should be reversed.

1. This is a common-law action by an employee's widow against the workmen's compensation insurance carrier of her deceased husband's employer and the carrier's agent for the wrongful death of the employee resulting from the alleged negligence of the defendants in inspecting the machinery of the employer and failing to warn employees of the dangerous condition of a machine. The employee's death is shown by the allegations to be compensable under the workmen's compensation law. The trial court sustained the defendants' motion to dismiss the complaint as failing to state a claim upon which relief can be granted. The Court of Appeals affirmed, holding that, under the circumstances alleged, the insurance carrier and its agent were the alter ego of the employer within the statutory definition equating the carrier to the employer "as far as applicable" and in this respect entitled to the immunity afforded the employer, under the workmen's compensation law excluding, as against the employer, "all other rights and remedies of such

employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death" and not to be regarded as "a person or persons other than the employer" who may be "liable to pay damages," citing *Code Ann.* §§ 114-101, 114-102, 114-103, and 114-403.

2. As the Court of Appeals recognized, the issue to be decided is one of novel impression in this State and there is a split of authority in other jurisdictions. See 93 ALR2d 598 and Later Case Service, ALR2d. In this connection it should be noted that at least two of the cases therein cited as denying recovery have been reversed on appeal, i.e., Mays v. Liberty Mut. Ins. Co. (1962, DC Pa.) 211 FSupp. 541, rev'd. by 323 F2d 174; and Nelson v. Union Wire Rope Corp. (1963), 39 Ill. App. 2d 73 (187 NE2d 425), rev'd. by 31 Ill. 2d 69 (199 NE2d 769). Since a study of these foreign cases reveals that such differing factors as factual situations, statutory provisions and public policies account for the opposite results reached, it is apparent that the issue must be decided on the basis of such factors under applicable Georgia law, our courts not being bound by decisions from other jurisdictions. *Martin v. Henson,* 95 Ga. App. 715, 733 (99 SE2d 251).

3. The Court of Appeals did not consider the issue of the common-law tort liability of the defendants because it adjudged them to be immune from liability under our compensation Act. In my view of the case, however, it is logical to first determine the common-law liability under the complaint, and then determine if the Act has granted immunity. In making the first determination above, it must be remembered that, under our system of notice pleading, " . . . a motion to dismiss should not be granted unless the allegations in the complaint disclose with certainty that the plaintiff would not be entitled to any relief under any state of facts which could be proved in support of the claim." *Residential Developments, Inc. v. Mann,* 225 Ga. 393, 397 (169 SE2d 305). Hence, even if the particulars of negligence alleged in the complaint be considered doubtful as to stating a claim, the plaintiff would still have an opportunity under *Code Ann.* § 81A-115 (Ga. L. 1966, pp. 609, 627,

as amended, Ga. L. 1968, pp. 1104, 1106) to amend her pleadings and introduce whatever evidence might prove her claim. If the statement of the Court of Appeals that "[u]nder the circumstances alleged . . . " the defendants were the alter ego of the employer, means that the complaint was dismissed on the basis of the particular acts of negligence alleged, then it amounts to the former practice, no longer in effect, of sustaining a general demurrer to a petition on the sole basis of its literal allegations.

4. There is respectable authority supporting the common-law action as alleged in this complaint. "Originating with the decision of Coggs v. Bernard, 2 Lord Raymond 909, it has come to be a recognized principle that liability can arise from the negligent performance of a voluntary undertaking. In our times a clear and oft-cited statement of the principle is the language of Justice Cardozo in Glanzer v. Shepard, 233 N. Y. 236, 135 NE 275, 276 [23 ALR 1425], when he said 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' (See also: 38 Am. Jur., Neg. sec. 17; 5 Harvard Law Review 222)." Nelson v. Union Wire Rope Corp., 31 Ill. 2d 69, 74, supra. "One who gratuitously renders services to another . . . is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise with reasonable care such competence and skill as he possesses." Restatement, Torts, § 323 (1). "The language that a volunteer is liable for failure to use such competence and skill as he possesses does not admit to a conclusion that the only duty of the volunteer is to refrain from positive acts of negligence. Moreover, in those cases, subsequently discussed, where insurers have incurred liability as the result of gratuitous inspections of machines and equipment, liability rested upon a breach of the duty to make the inspections with due care, not upon acts which 'created' dangers or defects, or which caused the occurrence by which injury was received. . . There is respectable authority, old and new, that gratuitous inspections by insurers may be made under such circumstances as to create an enforceable duty to persons known and unknown." Nelson, 31 Ill. 2d 69, 75, supra,

and cit. The Nelson case relied upon evidence showing that the carrier had conducted safety inspections which were "planned, periodic and directed to the safety of the employees." P. 83. In this State it has been recognized that "negligence is the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do," and hence, that "negligence consists either of the omission to do an act which ought to be done, or the omission to perform properly what one undertakes to do." *Womack v. Central Ga. Cas. Co.*, 85 Ga. App. 799, 803 (70 SE2d 398), citing *Southern R. Co. v. Chatman*, 124 Ga. 1026 (53 SE 692, 6 LRA (NS) 283) ; *Newill v. Atlanta Gas Light Co.*, 48 Ga. App. 226 (172 SE 232) ; and *Code* § 105-201. See also *Emory University v. Lee*, 97 Ga. App. 680, 691 (104 SE2d 234), citing *Wright v. Southern R. Co.*, 62 Ga. App. 316 (3) (7 SE2d 793) ; *Thomas v. Williams*, 105 Ga. App. 321, 326 (124 SE2d 409).

With regard to the fact that there is no privity of contract between the carrier and the employee, the Nelson case pointed out that "the vast majority of jurisdictions . . . [have] long since refused to permit the ancient shield of privity to insulate a tortfeasor from the consequences of his negligent conduct." P. 84.

As to the foreseeability of injuries to the employees as a result of the defendants' negligence, the employees were the chief beneficiaries of the safety inspection services rendered by the defendants, since the inspections were for the purpose of preventing injuries to them, and defendants could reasonably have expected and foreseen that such employees would be endangered by defendants' failure to use due care.

Nor would the fact that the injury might have been caused in part by the employer's negligence in maintaining a safe place to work bar a recovery. "[I]t is fundamental in the law of negligence that there may be more than one proximate cause of injury, . . . and that one is liable for its negligent conduct whether it contributed in whole or in part to the plaintiff's injury, so long as it was one of the proximate causes of injury." Nelson, supra, p. 88. Regardless of whether or not the evidence

might show negligence on the part of the employer which may have contributed to the injury, moreover, "there is no basis upon which the employer can be a joint tortfeasor with a third person as to an employee where both employer and employee are under the act." *Williams Bros. Lumber Co. v. Meisel,* 85 Ga. App. 72, 75 (68 SE2d 384) ; *Echols v. Chattooga Mercantile Co.,* 74 Ga. App. 18, 24 (38 SE2d 675).

The above authorities should suffice to show that the plaintiff might prove a claim against the defendants on the merits within the framework of the complaint.

5. The principal divergence of the cases of this type arises over the issue of whether the compensation Act operates to destroy the injured employee's common-law right to sue the party responsible for the injury. The common law is of force in this State except where modified by statute or not adjusted to our situation. *Brooks v. Ready Mix Concrete Co.,* 94 Ga. App. 791, 793 (96 SE2d 213) and cit.

I have concluded that a compensation carrier is not immune from common-law tort liability for its own acts of negligence causing injury to an employee and that the carrier may be a third-party tortfeasor within the meaning of the Georgia Act.

*Code Ann.* § 114-101, in defining "employer," provides that "If the employer is insured, this term shall include his insurer *as far as applicable.*" (Emphasis supplied.) An application of the ordinary signification to the italicized words, as is required by the rules governing the construction of all statutory enactments (*Code* § 102-102 (1)), demands the construction that the insurer is not included in the term "employer" in every situation nor in every use of the term in the Act. This can be aptly illustrated by the hypothetical situation in which the insurer, in making its inspection, negligently sets fire to and burns down the employer's premises. Surely, no one could equate the identities of the insurer and the employer so as to bar a tort action by the employer against the insurer for damages in those circumstances. The legislature, in employing the phrase "as far as applicable," must be presumed to have intended exceptions to this identity; otherwise, it could have simply omitted the words. Indeed, most of those decisions

which have held the carrier to be equated with the employer, hence immune to such actions, have been based primarily on statutes which specifically equated the two with no exceptions. Nor does any other provision of our law equate the two. On the contrary, in many provisions of the Act the employer and the carrier are mentioned separately. See *Code Ann.* §§ 114-404, 114-405, 114-417, and 114-809, for examples.

Our case law recognizes that the limited equality of the carrier and the employer is for the purpose of facilitating the payment of compensation by the carrier to the employee and to otherwise facilitate the discharge of the provisions of the Act in behalf of the employer. "It is well settled that a proceeding under the compensation Act is a proceeding against the employer, and that *the insurance carrier's only obligation is to pay any award of compensation rendered against the employer.*" (Emphasis supplied.) *Patterson v. Curtis Publishing Co.*, 58 Ga. App. 211 (198 SE 102). "The carrier of insurance for the employer, insuring the compensation awarded the employee under the provisions of the Workmen's Compensation Act, stands in the shoes of such employer *so long as such carrier is dealing with the compensation provided for under the provisions of such act. . .*" (Emphasis supplied.) *Maryland Cas. Co. v. Stephens*, 76 Ga. App. 723, 728 (47 SE2d 108). It must be borne in mind that the present action is brought against the defendant, not in its capacity as a workmen's compensation carrier, but in its capacity as a third-party tortfeasor, for breach of a common-law duty. Hence, in these circumstances the defendant is not "dealing with the compensation provided for under the provisions of such Act."

*Code* § 114-103, covering the exclusiveness of remedies, has been held to mean, properly construed, "that the rights of the employee under the Act shall be exclusive *only as against the employer.*" *Echols v. Chattooga Mercantile Co.*, 74 Ga. App. 18 (3a), supra. (Emphasis supplied). The Act does not prevent recovery against a tortfeasor other than the employer, of a greater amount than that fixed in an award. *Athens R. &c. Co. v. Kinney*, 160 Ga. 1 (127 SE 290); *Echols*, supra, Hn. 3 (b). Furthermore, even as against the employer,

the Act does not "deprive an employee of any common law action which he might have against his employer, unless the action which he seeks to assert is one for an injury as to which relief has actually been granted under the compensation laws." Skelton v. W. T. Grant Co., 331 F2d 593, 595.

Code § 114-403 (Ga. L. 1922, pp. 185, 186, as amended, Ga. L. 1963, pp. 141, 145) specifically allows for third-party claims as well as compensation payments and grants to the employer or his carrier the right to reimbursement from the third-party tortfeasor, subrogated to the employee's right to recovery therefrom, to the extent of compensation payments payable. The fact that both employer and carrier are mentioned therein does not demand the conclusion that the carrier cannot be a third-party tortfeasor, but merely indicates the probability that the legislature did not have this particular situation in mind at that time. The result of the defendant insurer's being subrogated to the rights of its own plaintiff for the amount of the insurance paid to him is not so incongruous as to lead to the conclusion that the legislature would never have intended such a result to occur. The apparent incongruity can be reconciled by allowing the defendant insurer to setoff for the compensation paid. See Ray v. Transamerica Ins. Co., 10 Mich. App. 55 (158 NW2d 786).

I find no public policy of this State contrary to what is here held. Our courts have refused immunity from tort liability to religious orders (Lamb v. Redemptorist Fathers of Ga., Inc., 111 Ga. App. 491 (142 SE2d 278)); hospitals (Thompson v. Hospital Authority of Upson County, 114 Ga. App. 324, 325 (151 SE2d 183) and cit.); charitable educational institutions (Morehouse College v. Russell, 219 Ga. 717 (135 SE2d 432)); and the charitable institution, the Young Men's Christian Association (Y.M.C.A.) (Y.M.C.A. v. Bailey, 112 Ga. App. 684 (146 SE2d 324)). Since the above are not immune from tort liability, I can see no compelling reason why insurance carriers, which are engaged in business for profit, should be given a privileged position denied to the foregoing. "We do not believe that the Act was ever intended to allow one to negligently injure or wilfully batter another and pass blithely on, exempt-

ing himself from all liability by showing that the person injured received his injuries during the course of his employment and while under the terms of this Act. To give the Act such effect would be grossly against the public policy of the State, and could well lead to a reckless abandonment of those duties which one owes to his fellow man. . . Nor does this rule which we have stated have the effect of permitting two recoveries for the same injury. It is 'in no sense different from collecting his compensation and also collecting on an accident policy,' or collecting on an insurance policy and then recovering damages from the person inflicting the injuries, both of which are permitted universally." *Echols v. Chattooga Mercantile Co.,* 74 Ga. App. 18, 23, supra.

Our public policy of protection of the well-being of the employee would be better served by holding carriers liable for negligent inspections, since they would likely continue such inspections for their own financial interest, but would perform them more carefully with the knowledge of their tort liability for negligent inspection.

In an excellent study of this problem in 54 Iowa Law Review 674, four tests for determining who is a third party are proposed, based upon the following three possible rationales for the third-party exception: (1) "[T]he purpose of workmen's compensation is to place the expense of employee injuries on the employer's business which created the hazard. Therefore, if the hazard is not created by the employer's business, the party that actually created the hazard should bear the responsibility for the loss." (2) "[W]orkmen's compensation places the burden on the employer for accidents that are typical or inherent in his business. When the accident is caused by an outside third party it is no longer typical or inherent in the emloyer's business. That third person, therefore, should bear the loss." (3) "[S]ince the workmen's compensation statutes were enacted for the employee's benefit, his well-being is the primary concern. Under this system, the compensation the injured employee receives is less than what he probably could recover in a civil action against the wrongdoer. Thus it can be argued that the legislatures included the third party liability section

to further enhance and protect the well-being of the employees. This is supported by the theory that workmen's compensation statutes were intended to enlarge the scope of recovery to the employee and not reduce it. Thus, those persons, other than the employer or others specifically granted immunity in the statute, who would have been liable before workmen's compensation statutes should remain liable. The well-being of the employee is further protected, since holding third parties liable would tend to promote safety. If third parties knew that they would not be held liable for accidents which they had caused because the employee's sole remedy was workmen's compensation, there could be a tendency for third parties not to be as careful as they might otherwise be." P. 678. The four proposed tests are, briefly: (1) "[I]f the inspection is made primarily for the benefit of the insurer then a separable interest for the inspection exists and the insurer would be liable to suit as a third party. But if the inspection is made primarily for the employer's benefit then there would be no separable interest and the insurer would be immune from suit." P. 680. (2) Whether the insurance carrier contributes anything to the workmen's compensation system, as the employer has given up his common-law defenses and has had to pay for all the compensable injuries and the employee has given up his right to bring a civil action against the employer. The article suggests that the insurer is being paid to make the payments, hence has neither contributed anything to nor forfeited anything for the benefit of the system and would receive a windfall if given immunity. (3) Whether the employer has any control over the inspections, in which case injuries due to negligent inspections would be a hazard of the employer's business, or no control, in which case the carrier should be held liable to suit as a third party. (4) Whether the ultimate financial loss will fall on the employer, in which case the purpose of the system would be defeated, or upon the wrongdoer, whose loss may or may not be spread among persons other than the employer, which would, in either event, uphold the system.

An application of some or all of the above proposed tests might well result in a holding of the defendant carrier to be liable

as a third-party tortfeasor. . The above article also suggests a policy reason for this construction which the author considers sound, as do I, to wit: If the court finds that the insurers are third parties within the meaning of the statute, the legislature, which enacted the law and which is the proper policy-making body, can, with pressure by the insurance companies' lobby, study the issue and rather simply grant the immunity if it is deemed desirable. On the other hand, a contrary holding might tend to preclude legislative consideration of the issue, since once rights are given by the courts or by the legislature it is very difficult to take those rights away. Furthermore, "[t]o so hold would be to give greater meaning to the words used than is obvious the legislature itself intended to give, and would be an enlargement of the terms of the act by judicial fiat. This we are loath to do. . . This Court will not read into the act a provision in derogation of the common-law right of an injured employee to sue a negligent third party for damages." Ray v. Transamerica Ins. Co., 10 Mich. App. 55, 61, supra.

I am authorized to state that Justice Nichols concurs in this dissent.